UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD QUAKENBUSH,

    Plaintiff,                                             Hon. Robert J. Jonker

v.                                                          Case No. 1:13-CV-1087

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and*

*Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).  The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence.  *See* 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla, but less than a preponderance.  *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted).  It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).  In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight.  *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff was 34 years of age on his alleged disability onset date. (Tr. 161). He successfully completed high school and previously worked as a set-up operator/buffer and line cook. (Tr. 22). Plaintiff applied for benefits on August 3, 2010, alleging that he had been disabled since February 19, 2010, due to a bulging disc in his back, steel rods in both legs, and left hip pain. (Tr. 161-74, 204). Plaintiff's applications were denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 96-160). On April 11, 2012, Plaintiff appeared before ALJ Michael Condon with testimony being offered by Plaintiff and a vocational expert. (Tr. 28-87). In a written decision dated May 25, 2012, the ALJ determined that Plaintiff was not disabled. (Tr. 13-23). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-6). Plaintiff subsequently initiated this pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

On January 22, 2014, Plaintiff filed his initial brief in this matter alleging several grounds for relief. (Dkt. #17). On March 27, 2014, the Commissioner responded by moving to reverse the underlying decision and remand this matter for further factual findings. (Dkt. #22). Specifically, the Commissioner expressly conceded that the ALJ's decision was not, in several respects, not supported by substantial evidence. (Dkt. #22). Plaintiff opposes the Commissioner's motion on the ground that he is entitled to an immediate award of benefits. (Dkt. #23). Thus, the issue before the Court is simply whether Plaintiff is entitled to an immediate award of benefits or whether instead this matter must be remanded to the Commissioner for further factual findings.

## RELEVANT MEDICAL EVIDENCE

On January 18, 2009, Plaintiff participated in an MRI examination of his lumbar spine the results of which revealed "L5-S1 left disc extrusion with S1 nerve compression." (Tr. 296).

On January 22, 2009, Plaintiff was examined by Physician's Assistant Steven Cowing and Dr. Michael Kasten. (Tr. 339-43). Plaintiff reported experiencing lower back pain which radiated into his left lower extremity. (Tr. 339). With respect to Plaintiff's subjective allegations, Cowing reported the following:

> His pain scale at rest is 5/10. With certain motions, when he gets the radicular symptoms, it increases to 9/10 and is very sharp. Otherwise, the pain is a dull ache located in the left side of his lower back and left buttocks. He has pain constantly but it waxes and wanes. It has been consistent since last Fall. Overall, his symptoms have been worse over the last four weeks.

(Tr. 339).

An examination of Plaintiff's lumbar spine revealed the following:

Lumbar Spine

General (R,L): Normal gait, Stands erect

Inspection (R,L): Spine appears straight, No Erythema, No ecchymosis, No swelling, No abnormal pigmentation, Able to heel and toe walk

Palpation (R,L): Paravertebral musculature tenderness present, No muscle spasm

Motor Strength (R,L): EHL motor strength: 5/5, AT motor strength: 5/5, Peroneal motor strength: 5/5, Gastroc/Soleus motor strength: 5/5, Quadriceps motor strength: 5/5, IS motor strength: 5/5

Sensation (R,L): Intact to light touch, Intact to proprioception

> Reflexes (R,L): Patellar reflexes +2, Achilles reflexes +2, Downgoing toes, Clonus absent, No atrophy present
>
> Special Testing (R): Negative straight leg raise to 90 degrees
>
> Special Testing (L): Positive straight leg raise to 70 degrees
>
> Range of Motion (R,L): Decreased flexion, Decreased extension, Decreased left side bending, Decreased right side bending, Decreased left rotation, Decreased right rotation
>
> Study Results: Review of the patient's MRI on the Bronson PACS reveals degenerative disc disease at L5-S1 and a large left-sided disc extrusion with caudal migration, including migration into the foramen impinging both the developing left S1 nerve root as well as the exiting left L5 nerve root.

(Tr. 341-42).

A March 30, 2009 examination revealed "mild tenderness to palpation" at the lumbosacral junction. (Tr. 333). However, Plaintiff's bilateral lower extremities were neurovascularly intact and straight leg raising was negative. (Tr. 333). Physician's Assistant Cowing concluded that Plaintiff was experiencing a "large disc herniation, left-sided, at L5-S1 with resolution of radicular symptoms after epidural steroid injections but continued low back pain." (Tr. 333). Cowing further observed:

> We had a lengthy discussion concerning low back pain versus radicular symptoms and the effectiveness of epidural steroid injections. The patient may benefit from a discectomy; however, his radicular symptoms have completely resolved and the back pain may be from the disc degeneration, which would not be alleviated with a discectomy. The patient may in the future need a posterior arthrodesis at L5-S1 for stabilization due to the disc degeneration following the herniation. He is not interested in surgical intervention at this time anyway. I did refill his Norco, and he knows to follow up with his family doctor for further prescriptions. I offered physical therapy but he declined. We will see him back on a p.r.n. basis. We

>discussed the signs and symptoms of cauda equina syndrome and he understands to go to the emergency room if any occur.

(Tr. 333).

On June 30, 2009, Plaintiff's treating physician reported that Plaintiff was able to work with the following restrictions: (1) no lifting over 30 pounds; and (2) Plaintiff required a sit/stand option. (Tr. 345).

On June 30, 2009, Plaintiff was examined by Dr. Kasten. (Tr. 331). Plaintiff reported that he was experiencing "more and more back pain" and wanted to explore the possibility of surgery. (Tr. 331). The doctor explained to Plaintiff "that his problem is a left-sided disc herniation that has resolved and he has residual degenerative changes in his lumbosacral discs, which may be giving him significant problem with prolonged standing and sitting." (Tr. 331).

On August 26, 2009, Plaintiff was examined by Physician's Assistant Emily Jonker and Dr. Alain Fabi. (Tr. 359-61). Plaintiff exhibited a "normal" gait and the results of motor, reflex, and sensory testing were unremarkable. (Tr. 360). Review of a previous MRI examination revealed:

>MRI of the lumbar spine shows fairly significant herniated disk at L5-S1 with compression of the exiting left S1 nerve root. The patient also has degenerative disk disease at this level. He has a bulging disk and lateral recess stenosis at L4-5 as well with compression of the exiting left L5 nerve root.

(Tr. 360). Dr. Fabi concluded as follows:

>This patient certainly does have two-level disk disease; the leg pain is resolved and most of the pain is centered in the back which is fairly significant. The patient has tried multiple modalities of therapy to try and deal with this through a more conservative route with injections, physical therapy on multiple occasions without significant relief. He has seen Dr. Kasten and some consideration of doing a fusion. Because of the nature of his pain distribution they were still trying to work on a conservative route and he is here for a second opinion. I

6

>do not disagree with the fact that the back pain is problematic and it is difficult to know what the best course of action for this is. The leg pain which I would expect is still causing problems but seems to have resolved. This picture was done about seven months ago and the pain is certainly different. It would be nice to know just how different it is from this picture to determine if there is anything further we could do. He is scheduled for a diskogram and I agree with the diskogram at least at this point to decipher how many levels or which disk, if in fact the L4-5 and L5-S1 may be involved. If this were the case and the MRI shows similar findings I would think he may be a candidate for a minimally invasive fusion of the L4-5 and L5-S1 interspace. I will make that determination once we see him back.

(Tr. 361).

On September 21, 2009, Plaintiff participated in an MRI examination of his lumbar spine the results of which revealed:

>1. Comparison with the prior examination demonstrates that the left paracentral disc extrusion at L5-S1 was more prominent on the prior examination. While still displaced posteriorly by the disc, the descending S1 nerve root is not as involved as on the prior examination.

(Tr. 295).

Treatment notes dated October 30, 2009, reveal the following:

>Donald is a white male, thin, and in no acute distress. His back showed no obvious scoliosis. He is tender along the left lumbar area. He has a positive straight leg raise at 60 degrees on the left, negative on the right. He had normal proximal and distal lower extremity strength and his patellar and ankle reflexes are normal and symmetrical. He can heel and toe walk without difficulty. He has significant decrease in lumbar flexion as he can only touch his knees. He had normal extension, decreased lateral bending and rotation all of which seems to cause him pain.

(Tr. 405).

On January 5, 2010, Plaintiff reported that his current medication regimen "does seem to be working for him" and the doctor observed that "I do think he is doing better." (Tr. 402). Treatment notes dated February 15, 2010 indicate that Plaintiff's "back is straight" with "no obvious deformities." (Tr. 399). Plaintiff's gait was characterized as "normal" and "deep tendon reflexes are 2+[1] and equal bilaterally in the lower extremities." (Tr. 399).

Treatment notes dated February 15, 2010, indicate that Plaintiff's "back is straight [with] no obvious deformities." (Tr. 316). Plaintiff's deep tendon reflexes were "2+ and equal bilaterally in the lower extremities" and "his gait is normal." (Tr. 316).

On February 26, 2010, Plaintiff participated in an MRI examination of his lumbar spine the results of which revealed:

> Findings:
> Comparison to MR lumbar spine September 21, 2009.
> At L4-L5 there is a small left paracentral disc protrusion and mild left facet degenerative change. Subtle narrowing of the left lateral recess but no root compression or significant spinal stenosis. No significant interval change.
>
> At L5-S1 there is a large left paracentral caudal disc extrusion, larger than what was seen at the time of the prior examination. Mild facet degenerative change. This disc extrusion compresses the left S1 root sleeve. Degenerative changes result in moderate left and mild right foraminal stenosis. The degree of foraminal stenosis is similar.
>
> The S1 root compression is greater than before.
>
> No upper lumbar disc herniation or spinal stenosis. Unremarkable conus medullaris.
> Impression:
> 1.   Stable appearance at L4-L5 without definite root compression.

---

[1] Deep tendon reflexes are rated on a scale of 0-5, with 2+ being considered "normal." *See* Deep Tendon Reflexes, available at http://stanfordmedicine25.stanford.edu/the25/tendon.html (last visited on February 9, 2015).

>   2. Larger left caudal disc extrusion at L5-S1 from which one would expect left S1 root symptoms.

(Tr. 294).

On March 26, 2010, Plaintiff was examined by Dr. Suresh Ramnath. (Tr. 455-56).

A physical examination revealed the following:

> On examination, he has normal pulses in the legs and no edema or cyanosis. He has a well-healed vertical scar above and below the right knee and three scars on the left, one around the left hip, one in the mid thigh laterally, and one just above the knee also on the lateral aspect. Motor examination showed no weakness, atrophy, clonus, or fasciculations. Deep tendon reflexes were quite brisk at 3+ at the knees, 2+ at the ankles, perhaps a little less on the left. Plantar responses were flexor. Sensory findings were within normal limits for pinprick, light touch, pressure, joint position, and vibration sensation as well as perianal sensation. Straight leg raising was possible to almost 90 degrees bilaterally with a mild degree of back pain and some pain in the left buttock and hip with straight leg raising on the left.
>
> Sitting up straight leg raising was possible to almost 90 degrees on the left again with some pain in the hip and was negative on the right. There was no restriction of hip joint movements. Examination of the back showed no spasm, malalignment, or localized tenderness. Flexion of the low back was limited to about two-thirds of normal with back pain and no leg pain, with continued back pain and decrease in all directions of movement. The back pain is particularly worse with extension of the trunk. Gait, tandem gait, walking on heel and tiptoe, stepping up on to a stool leading with either foot, and Romberg were within normal limits.
>
> An MR scan of the lumbar spine done in January 2009 shows a herniated disk at L5-S1 on the left. He has apparently had two other scans more recently, but these were not available on the CD sent with him. He does have degenerative disk disease at L4-L5 and L5-S1. I have asked him to try to obtain the other scans and send them to us for review. I have discussed various surgical options with him and told him that if he has significant left leg pain, he might be a candidate for surgical procedures, but otherwise he might not benefit a great deal from an operation. He says he has had some epidural

> steroid injections in the past without much benefit. At this point, without reviewing the other scans, I would suggest that he be started on a program of exercises for the back and a trial of physiotherapy.

(Tr. 455-56).

Plaintiff began participating in physical therapy on April 13, 2010. (Tr. 311-12). Plaintiff rated his back pain as 5/10. (Tr. 311). Plaintiff was discharged from physical therapy on June 24, 2010, with the following comments:

> It is my impression the patient has an extension dysfunction and will need to do rigorous and frequent mobilization of his back. He would benefit from continuing the core strengthening program as well. Unfortunately []his inconsistent attendance makes it difficult for us to make any significant progress.

(Tr. 297).

On October 29, 2010, Plaintiff participated in a consultive examination conducted by Dr. Danelle Kutner. (Tr. 318-21). With respect to Plaintiff's subjective allegations, the doctor reported the following:

> This is a 35 year old male who presents today with complaints of low back pain since February 2010. He states he has a herniated disc at L5-S1. He also complains of pain in his bilateral lower extremities for the past 14 years. The patient had a motor vehicle collision that occurred 14 years ago in which he broke his left femur and right tibia. He had rods placed in both of them. He also complains of left hip pain which occurred 10 years ago after a second motor vehicle collision that he had where he broke his left hip. There was no surgical intervention done at this time. The patient states that he is a factory worker and has difficulty completing tasks involving his job such as bending, lifting, twisting, and standing for long periods of time. The patient can stand for approximately 20 to 30 minutes, walk for 45 minutes, or sit for approximately 30 minutes. The patient can lift occasionally 30 pounds, frequently 10 pounds, and constantly five pounds. The patient is taking Morphine and Norco for the pain which he says on some days helps him, but occasionally does not help his pain. Since the injury to his lumbar spine with the herniation in

> February of this year, patient was fired from his job due to his inability to bend and twist. He does not use an assistive device.

(Tr. 318). A physical examination revealed, in part, the following:

> EXTREMITIES AND MUSCULOSKELETAL: There are no obvious bony deformities. Range of motion was decreased in the lumbar spine. There is no tenderness, erythema, or effusion of any joint. There is scarring on the right lower extremity, as well as the left lower extremity from his prior surgeries. Straight leg raising test was negative on the right, positive on the left at 30 degrees. There is no paravertebral muscle spasm. Peripheral pulses are easily palpated and symmetrical. There is no edema. There is no evidence of varicose veins. Grip strength is intact. The hands have full dexterity. The patient had mild difficulty getting on and off the examination table, mild difficulty heel and toe walking, mild difficulty squatting, mild difficulty hopping.
>
> NEURO: Motor strength was 5/5 in the bilateral upper extremities and right lower extremity, 4/5 in the left lower extremity. Sensation is decreased on the right lower extremity over the surgical scar around his ankle, otherwise sensation is intact. Reflexes were present and symmetrical. The patient is alert and oriented times three.

(Tr. 319-20).

On December 6, 2011, Plaintiff participated in an independent medical examination conducted by Dr. David Muzlakovich. (Tr.420-23). A physical examination revealed the following:

> Blood pressure          130/76
> Pulse                   64 and regular
> Height                  5 feet 10 inches
> Weight                  126 pounds
>
> On inspection the patient has a slender build. He has no skeletal deformities. Incisions consistent with his intramedullary rod placement in the left femur and the right tibia. No scars on his back. He has flattening of the normal lumbar lordosis. No scoliotic curse, pelvis obliquity or leg length discrepancy.
>
> Reflexes are brisk in the upper and lower extremities. Hoffmann's and Babinski's signs are absent. Sensation reveals hypoesthesia

11

>distally in the right leg in an overlapping L5-S1 dermatomal pattern. Sensation intact in the left leg to pinwheel, vibration and Weinstein monofilament testing. Manual motor testing reveals no asymmetrical pattern of weakness. No focal muscle atrophy or signs of spasticity noted. Lasègue's maneuver was positive on the right, equivocal on the left at about 80 degrees. Patrick's test for hip irritation negative. Gaenslen's maneuver for SI joint pain negative. He has no tenderness over the trochanteric bursae or the ischial tuberosities.
>
>Gait pattern is stable. He is not using any adaptive equipment or orthotics. The patient has pain with forward flexion past 30 degrees, extension past neural. No palpable segmental instability through the lumbar spine. No soft tissue masses, unusual rashes or blistering to suggest shingles noted.

(Tr. 422). The doctor concluded as follows:

>IMPRESSION:
>1.   Chronic mechanical low back pain secondary to degenerative spondylosis and a large disc herniation L5-S1 with caudal migration and S1 radiculopathies at this time more prominent on the right than left.
>
>2.   Bone pain focal to the left femur in a patient who had prior significant trauma requiring intramedullary rod placement which is still present at this time.

(Tr. 422-23).

On April 6, 2012, Dr. Mary Slater completed a report concerning Plaintiff's residual functional capacity. (Tr. 471-78). The doctor reported that Plaintiff can frequently lift/carry 10 pounds, can stand/walk "less than 2 hours in an 8-hour workday," and requires a sit/stand option. (Tr. 472). The doctor reported that Plaintiff can occasionally balance, stoop, and climb ramps and stairs, but can never kneel, crouch, or crawl. (Tr. 473). The doctor reported that Plaintiff experienced no manipulative, visual, or communicative limitations. (Tr. 474-75).

On April 10, 2012, Dr. Muzlakovich completed a report regarding Plaintiff's residual functional capacity. (Tr. 481-86). The doctor reported that Plaintiff can occasionally lift/carry up to 10 pounds. (Tr. 481). The doctor reported that Plaintiff can, without interruption, sit for 30-60 minutes, stand for 30-60 minutes, and walk 30-60 minutes. (Tr. 482). The doctor reported that during an 8-hour workday, Plaintiff can sit, stand, and walk for two hours each. (Tr. 482). The doctor reported that Plaintiff can "continuously" use both upper extremities to engage in reaching, handling, fingering, feeling, and pushing/pulling activities. (Tr. 483). The doctor reported that Plaintiff can "occasionally" use his lower extremities to operate foot controls. (Tr. 483). The doctor reported that Plaintiff can occasionally balance and climb stairs/ramps, but can never stoop, kneel, crouch, or crawl. (Tr. 484).

## ANALYSIS

In support of his position that he should be immediately awarded benefits, Plaintiff advances four arguments: (1) he satisfies Section 1.04A of the Listing of Impairments; (2) the ALJ failed to articulate sufficient reasons for affording less than controlling weight to his treating physician's opinions; (3) the ALJ improperly discounted Plaintiff's subjective allegations; and (4) the ALJ's decision rested upon responses by a vocational expert to inaccurate hypothetical questions.

I.	**Section 1.04A of the Listing of Impairments**

The Listing of Impairments, detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1, identifies various impairments which, if present to the severity detailed therein, result in a finding that the claimant is disabled. The burden rests with Plaintiff to demonstrate that he satisfies the requirements of a listed impairment. *See Kirby v. Comm'r of Soc. Sec.*, 2002 WL 1315617 at *1 (6th Cir., June 14, 2002).

> Section 1.04A of the Listing provides:
>
> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A.	Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R., Part 404, Subpart P, Appendix 1, § 1.04A.

The Commissioner concedes that the ALJ's conclusion that "there is no evidence of nerve root compression" is inaccurate. The Commissioner further argues, however, that the other requirements of Section 1.04A are not satisfied. The Court agrees. While the record indicates that Plaintiff has experienced nerve root compression and limitation of spinal motion, the record, detailed above, does not demonstrate that Plaintiff experiences the requisite motor loss, sensory/reflex loss, or positive straight leg raising. (Tr. 316, 319-20, 333, 341-42, 360, 399, 422, 455-56). In short,

Plaintiff has failed to demonstrate that he satisfies the requirements of this particular Listing. Accordingly, this argument is rejected.

**II.      Remaining Arguments**

As for Plaintiff's remaining arguments, the Commissioner concedes that the ALJ's decision is not supported by substantial evidence. While the parties agree that the ALJ's decision is not supported by substantial evidence, Plaintiff can be awarded benefits only if "all essential factual issues have been resolved" and "the record adequately establishes [his] entitlement to benefits." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994); *see also*, *Brooks v. Commissioner of Social Security*, 531 Fed. Appx. 636, 644 (6th Cir., Aug. 6, 2013). This latter requirement is satisfied "where the proof of disability is overwhelming or where proof of disability is strong and evidence to the contrary is lacking." *Faucher*, 17 F.3d at 176; *see also*, *Brooks*, 531 Fed. Appx. at 644.

As the medical evidence detailed above makes clear, Plaintiff's entitlement to disability benefits is not clear. There are a great many evidentiary conflicts in the record which must be resolved, a task which this Court is neither competent nor authorized to undertake in the first instance. Proof of Plaintiff's disability is certainly not overwhelming and while there may exist strong evidence that Plaintiff is disabled there exists much evidence to the contrary. Accordingly, Plaintiff's argument that he is entitled to an immediate award of benefits is rejected.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,


Date:  February 10, 2015               /s/ Ellen S. Carmody
                                       ELLEN S. CARMODY
                                       United States Magistrate Judge